All right, our fifth case for this morning is Higgs v. United States Park Police. We'll The district courts order here that the FBI disclose individuals' personal information, including their social security numbers, rap sheets, and fingerprint cards, from its investigation of a triple homicide, must be reversed. There is no conceivable connection between the individual's private information redacted or withheld here and the asserted public interest in communications between federal prosecutors for plaintiffs in plaintiffs' trial for the 1996 murder and Baltimore authorities about a 1998 murder. Plaintiff has simply never explained how the bulk of the documents here, which predate that 1998 murder, which is what sort of triggers the alleged improper communications, could actually shed any light on these communications. But that's the one that Gloria supposedly gets a free pass on because of his cooperation in the Patuxent case. That's correct. And we do have other arguments, as we've included in our brief, as to why the Maryland District Court, which twice rejected those exact same theories based on the exact same evidence presented here. Although with a different standard of review. Judge Mecidi had a 60-D before him. That's correct, Your Honor. Two things that we think are important to note there, though. The judge there didn't simply stop and say, we think you haven't met the high burden here. What the judge actually found there at page 496 of that opinion was you haven't brought colorable claim of fraud on the court. And there, the exact claim of fraud on the court was exactly the same claim here, which is that there were these improper communications and inducement and that then the United States hid those communications. So it's exactly the same here. And I think it's relevant, too, that the district court here actually disagreed with the plaintiff. And at page 21 of the order said it would be difficult to say whether the plaintiff had met his burden under Favish, presumably out of deference to the Maryland Federal District Court. Now, why didn't the government reveal the case? Justice Ginsburg, as you pointed out in the brief, was agnostic as to whether Mr. Higgs had made enough of a showing of possible government misconduct for purposes of the 7C analysis, but instead relied on this general public interest in knowing how the Department of Justice carries out law enforcement policy. In your view, is that interest, however weak or strong it may be, a legitimate interest to weigh against the privacy interest of individuals named in the investigative files? Or is it your view that Mr. Higgs must establish a more specific interest in disclosure? Yes, Your Honor, I want to be really careful here. So as limited to this case, I think that Mr. Higgs does have to actually meet the Favish standard, which is to show that a reasonable person would believe that alleged government impropriety had occurred. And the reason for that is also given in Favish, which is that Favish says allegations of government misconduct are easy to allege and hard to disprove. So courts must insist on a meaningful evidentiary showing before they overcome a 7C interest. So it would really turn Favish on its head to say, there's a FOIA case in which the requester says, I have allegations of one particular type of prosecutorial misconduct. I can't meet the Favish standard, but I can say the exact same thing and say that that's a general public interest in how the prosecutors exercise their discretion. And so this isn't a case where there have been any credible allegations of sort of a broader government policy. And so in the circumstances of this case, we think that the district court opinion was fatally flawed in sort of turning Favish on its head in that way. You know, it appears there was some foot dragging and delay by the various government agencies. Do the delays have any legitimate bearing on any of the FOIA issues raised in this case, or must we ignore them? No, Your Honor. We don't think that, particularly in the 7C context, where this court, for example, in Lakin, has emphasized that the privacy interest belongs to the individuals, and so has made clear that this court would be really reluctant to waive those individuals' privacy interests based on anything the government does or doesn't do, that it would be particularly inappropriate in the 7C context to apply waiver, which is a discretionary doctrine, to waive these folks' privacy interests. And with respect to that, I do just want to note that if the district court had any questions about whether folks were still alive after the district court, sort of inconsistent with what, and we say we think fundamentally inconsistent with what the district court did here, the district court, on the one hand, at page 24 of the opinion, says, of course, 22 years isn't long enough to presume these individuals have died. But then de facto creates that presumption by saying, well, because the FBI hasn't proved to me that each and every one of these individuals are alive, I'm going to treat all of them as dead and completely negate their privacy interests. And that, too, is incorrect. If the district court, while we don't think, given the relatively short passage of time, it was necessary for the FBI to conduct an investigation, at most what the district court had the discretion to do, as, for example, the D.C. Circuit held in the Campbell case, is to order the FBI to do that investigation. So, wait a minute. Is it your view that the burden here belongs to Higgs in the first instance? And do we know anything at all about the ages of any of the witnesses who were publicly named? Your Honor, I'm not sure as to the exact ages of the witnesses who were publicly named. But what I can tell you, which is I can tell you something that's both in the record and out of the record. Within the record, at page 6 of our motion for a stay after this really unusual and overbroad order, we explained to the district court that, in fact, the FBI had now done its preliminary investigation and that it believed all the individuals likely remained alive. What I can tell you, which is outside of the record, and I defer to your honors, of course, about how much you want to talk about that, is that the FBI has since completed that investigation. What I can also tell you— The burden belongs to Higgs or to you? So what, for example, in this context, not about whether 7C applies generally and the categories of people to whom the government has applied the 7C redactions all fit squarely within this court's jurisprudence, and, for example, Stein and In re Wade. So the FBI has met its burden that way. And what the D.C. Circuit has said, for example, in a Trecker case, is that in the context of whether or not one can presume that individuals are deceased, particularly after a relatively short period of time, such as 22 years, it's the government's rebuttable presumption that those folks are deceased. So the government carried its burden with respect to establishing that these are the type of people to whom the 7C exemption applies. And also the government explained that its view, 22 years was too short a time to presume death. The district court agreed with that. And then nevertheless, in actually performing the balancing that it was required to do under Exemption 7C, failed to actually accord them to weigh those privacy interests. So how is that going to work in later cases? So maybe it won't be 22 years next time. Maybe it will be 35 years or some number. You know, plenty of people are still kicking around 35 years after something happens. But, yeah, some of us even. But does there come a time that the government just needs to show, without waiting for all this rebuttable presumption and everything, the government just needs to say in maybe creating the Vaughan Index, you know, and we verify that the individual in question is alive? Yes, Your Honor. So for the reasons that we explained in our brief, we don't think that makes sense to do in every case, especially in cases that are of a relatively short duration. And we would actually say that 35 years is a relatively short duration as well. The presumption that the FBI uses. That's very kind of you. The presumption that the FBI uses, which the D.C. Circuit has, again, accepted in the Schrecker case, is this 100-year rule. So if from the context of either the age of the FBI file itself, so if the FBI investigation was 100 years ago, you could presume that everybody in it had been deceased unless there was some, you know, newspaper article about how oldest living woman happens to still be alive. And that's so certainly at 100 years, where courts have sort of started to say, although the government does not concede that it necessarily agrees that anything, you know, under the 100 years changes this rebuttable presumption, around where courts have been is around the 50 or 60-year mark. And at around the 50 or 60-year mark, importantly, what courts don't say is you can just presume that they're dead and you don't give the FBI a chance to investigate. What they've said is at 50 or 60 years is within the district court's discretion to say, depending on, so for example, in Daven, depending on the number of people and the volume of the files, FBI, please go out and investigate to see whether or not they're deceased. But importantly, even in that context, both the Third Circuit in its later Frankenberry case and the D.C. Circuit in the Schrecker case have said, after the FBI has performed that investigation, based on all of the available information to it, if they can't tell definitively whether somebody is alive or dead after checking their records, so long as there's no reason to believe that that person is more than 100 years old, they've done all that they need to do. And that really does make sense because of how important a 7C privacy interest is in being associated with law enforcement files. So we think that that was fundamentally flawed, that first prong of the Favish analysis. As we discussed as well, we think that the public interest was flawed. But I see that I've run well into my rebuttal time. You're into your rebuttal time. Why don't you save a little bit because I suspect your opponents will also raise 7D, and you may want to say something about that. Thank you, Your Honor. Mr. Laurie. May it please the Court, Matthew Laurie on behalf of Justin Hicks. Would you mind starting out, Mr. Laurie, explaining to me what the public interest in disclosure is here? Because I'm having trouble seeing how this wouldn't apply to virtually every criminal case that comes down the road. Well, certainly the interest in disclosure has to do with whether the federal investigating and prosecuting agencies in this case sought to persuade the state investigating and prosecuting agencies not to prosecute Victor Gloria, who was the key government witness in the Capitol case against Dustin Hicks. But that sounds so case-specific. So it's not – certainly federal and state law enforcement authorities regularly cooperate with one another. That we know. Certainly. We also know that cases can be of different strengths. So maybe the federal prosecutor might say, you know, the case against Gloria for the Baltimore murder doesn't look so ironclad. I don't know whether you think that conversation is wrong, whether you're accusing actually the Maryland authorities of doing something inappropriate by not prosecuting Gloria. I don't know. It just seems very Brady-oriented. It seems like something that's been hashed over several times by the courts in the context of this case, Mr. Hicks' case. And so to draw the distinction between the public interest in, let's say, making sure prosecutors always abide by Brady, I don't know what it is. Well, first of all, I think the question that somewhat underlies this is, did the federal government help Victor Gloria get away with murder? And I think having an answer to that question is certainly a legitimate public interest. But also in the Roth decision, the court said that understanding the procedures and actions that led up to death sentences and having a disclosure of what happened in such a capital case before the actual execution takes place is a public interest. And so I think that the district court did identify a legitimate public interest. But if the court disagrees with that, there is still the public interest in bringing to light government. Interesting. In case you're curious. There's a public interest in almost all crime. Certainly. So what you're talking about is opening the investigative process to the public at large in any case. Well, I think that when we're talking about a capital case- It's different? I think it's different, yes. So if your client were only charged with assault with intent to commit murder, it wouldn't apply? Well, our argument is certainly that when it's a capital case, the interest is heightened, yes. But I also think that if the question is can we meet the standards set out in Favish, the answer is yes, we can. And the question under Favish is whether the evidence would warrant a belief by a reasonable person that misconduct may have occurred. But there's evidence, isn't there, that the Baltimore people thought it was Miller long before Gloria is involved in this case, and they still think it's Miller afterwards. I mean, there are going to be questions of judgment about this, and if we have to resolve all of them in favor of FOIA disclosure of investigative files, that would be a very aggressive statute. Well, I think that the question is, is there enough to warrant a belief by a reasonable person? And certainly there is, in my mind, when you have federal prosecutors who are basically relaying information from Victor Gloria. Victor Gloria says, they're pointing the finger at me for this reason. And the federal prosecutor takes that information and tells Baltimore, hey, this is what we think happened. They don't say it's what Victor Gloria told us. They say, this is what we think happened. But it obviously came from Victor Gloria. And Victor Gloria was never interviewed by the state authorities. They never asked for a proffer. Exactly what happened in this case, in the Baltimore case, was very unclear. At the end of the day, the sentencing judge there in Baltimore, and this is in the district court's opinion, said it was a muddled, factual statement that leaves few things clear, where the man who was eventually convicted of murder was given a five-year sentence. So there's plenty of information here that would warrant a belief by a reasonable person that some misconduct was occurring. But again, I mean, I can think of countless cases, whether they're Brady cases, whether they are witness tampering cases, whether they are, I mean, so I don't approve of any of that. But I never thought that that meant that FOIA allowed you to open up the whole file, that the remedy is to do something about the miscarriage of justice if there was one. Well, but FOIA says, I mean, to my mind, there is clearly an interest in uncovering misconduct of this magnitude, if it happens. Would that also give you a right to check the grand jury minutes? Well, I think grand jury minutes, I believe there's a specific exemption under FOIA for grand jury minutes. Well, no, there is. There's also an exemption to the exemption. In the interest of justice, the trial court can release the information contained in the grand jury. Possibly. I can't really comment on that. Well, I've been both a state's attorney and a United States attorney, and I can comment on it. And I'll tell you that's the rule. Also, since 9-11, the exchange of information between the state and the federal government has increased considerably. Because they don't want somebody sitting in and acknowledging. It doesn't pass to the person who can really do something about it. I would just want to know if your proposal extends to grand jury minutes. Well, it could conceivably, but my understanding was that there is a special exemption under Rule 6E for grand jury materials. But I don't believe it would necessarily, they would be disclosed under FOIA. So if I can turn then to the privacy interest, there's no question that there are privacy interests involved for identifying information. But the government always has the burden of showing that it's entitled to claim the exemption. And on this whole issue of whether persons were deceased or not, the government never tried to. But why does the government, suppose it had happened five years ago. Do you really think the government would have to go in and say, we think that the witnesses we talked to five years ago are still alive? You surely know, right? So what's wrong with 22 years? I mean, if you think some group of octogenarians were walking around the Patuxent Wildlife Preserve 22 years ago, and today they'd be over 100. I mean, that's one thing. But this is a question of burden. The prima facie showing is exactly when did the crime take place. The people, if they are still alive, would surely have a strong privacy interest in their personal identifying information. And what worries me about what the district court did is it really looks to me very much that the district court was angry at the government for dragging its feet for a long period of time. Fair enough. But I don't see anything in the FOIA exemption 7C that says as a sanction for foot dragging, you get to shut off the government's ability to provide information necessary to decide whether production is appropriate. But the government should really, as a matter of course, the FBI should be looking at this in terms of weighing the interest. But you know, it can be very burdensome, though. I mean, look, this is in the east coast of the United States. We don't have a central death record in the United States. You'd have to go to every county and little jurisdiction to find out whether people are dead or not. Right, but part of my point is the government didn't ever say, well, we're going to presume. The arguments that counsel has made here were open to the government and the district court. When we raised this issue about a lesser privacy interest for deceased persons, we raised it three times, and they never said anything. They never said, well, we can presume people to still be alive. They never said, let us do an investigation and we'll find out. And they never said anything until an unopposed motion to stay after the judgment had been issued. They didn't even ask the district court to alter or amend its judgment. But here's where I'm worried about this inappropriate sanction argument. This is the bottom of page 24, top of page 25 of the district court's order. The court's talking about 22 years, falls far short in 60 years, and Davin. As such, the court will not presume that the individuals at issue in this case are deceased. OK, I think that's fair enough. However, it then says, it wouldn't be that hard to require the park police to demonstrate that they're alive. Maybe OK. So far, so good. Without such a demonstration, can't conduct a necessary balancing. And then, all of a sudden, the court says, the court therefore concludes that the park police has not met its burden under Exemption 7c. Given the prolonged history of this case, the court will not give the park police a further opportunity to support its claim. And that is saying that the park police can be sanctioned. And it's really the witnesses whose privacy is being thrown out the window. Well, your honor, if you think that a remand is necessary to address that, then I think a remand is necessary to address some other things as well. Partly with respect to segregability, which is an issue for both of these exemptions. And the district court did not make any finding about segregability. So we can't know. Really, it has to be reversed on that basis on our appeal. Because a finding as to segregability is required. And it can't just be inferred from the fact that the district court ruled in favor of the government on 7d. Now, would you agree, though, that if we were to disagree with you about the public interest in disclosure, that would shut off both 7c and 7d? If you disagreed about the public interest, that's correct, your honor. You know, given the violent nature of the crimes and the likelihood that the sources that are named in these documents were relatively close to Higgs, isn't it entirely reasonable to infer that they provided information to the government with a total understanding that the information would be treated as confidential? What more does the government need to show in that regard? What more? Well, first, your honor, on the crime itself, in the case of Hale that was cited by the government, actually, that was a violent crime in a small Oklahoma town. And the court said that largely because it wasn't a case of any kind of organized crime effort, it was a personal response to some situation that the crime itself was not going to be a basis for inferring confidentiality. And then if you get to the relationship between the source and the crime, what the government has offered here is entirely conclusory about those relationships. And there's also the segregability issue. So on all of those, a remand would be required to parse those issues out. And if there are no further questions, I would ask the court to affirm on the 7C issue and to remand for further proceedings on 7D. All right. Thank you. Ms. Lopez. I just wanted to start by addressing the 7D issue, and then if I have any remaining time, if there's any remaining questions. I did want to first say that the district court did actually make a finding as to segregability at opinion 17 and note 7, in which what the district court said there was that the FBI properly withheld portions of the 1999 records pursuant to Exemption 7D, i.e. that is the segregability determination. And it's evident, as we discussed in our brief, in the face of the Vaughn and the FBI affidavits, why that really makes sense. What was withheld are, in FBI speak, FD302s, which are witness interviews with the confidential informants, and one document provided by the informant, all which fall squarely within the 7D. So what about Landano, though? I mean, there's no blanket presumption of confidentiality just because it's a nasty crime or because of anything else. There are a number of inquiries that the Supreme Court called for, and I'm not sure they were carefully made. So the government reads Landano to say that there are two generic circumstances from which an implied confidentiality can be inferred. And those two are the character of the crime and the source's relationship to it. And here, the government established both, both that the character of the crime is a triple homicide, which is a violent homicide and a part of Hale that we were citing. So this is at page 1031. It's quite clear that it doesn't always have to be gang-related. That's one of the examples Hale gives, but it contrasts that. Another example is a crime that's unusually cruel or gruesome, showing a propensity on behalf of the perpetrator for potential violence, which we think this squarely does. But that's not all the government showed here. The government also showed that the source's relationship, both by their proximity to Higgs and his associates and because they provided singular information, i.e., information that only one person could know. So, of course, you could trace that back to their identity. And there's really not anything more that the government could do without revealing the identity of those sources. And that's why the D.C. Circuit, for example, in Label, a case we discussed in our brief, said precisely these types of declarations by the FBI are enough to presume confidentiality. And why? I just thought Landano kind of didn't boil it down to just two things. I mean, that the court really seems to be asking for one of those all-the-facts-and-circumstances kinds of inquiries. I think that it's right that Landano says these aren't the only two generic circumstances. Absolutely. But what I do think that Landano also leaves open to the courts, and it's certainly the way that the D.C. Circuit has interpreted it, that if you meet those two main generic circumstances, that's fully enough to satisfy Landano's requirement. And we think we did that here. And we do think that the FBI's affidavits here match up to those that were considered sufficient under the D.C. Circuit and Label. I mean, the Hardy declarations are pretty general, it seemed to me, if that's what you mean by the affidavits. So I mean the Hardy affidavit read in conjunction with a Vaughn index. So the Hardy affidavit provides the general circumstances, which in a similar affidavits by the FBI, the D.C. Circuit has said is enough to establish that those generic conditions are met. And then you read that against the four documents for which the government claimed Exemption 7D and its Vaughn index. And in those four documents, you have the date, you have – and they were actually produced in, I mean, almost entirely redacted form. But you have the identification of the documents, which are witness interviews, and a document provided. So Exemption 7D is meant to protect against disclosure of both the identity of the confidential informant and information furnished by a confidential source. And so it fits squarely within that. If there are no further questions, we ask that the Court reverse on 7C and uphold on 7D. All right. Thank you very much. Thanks to all counsel. We will take the case under advisement.